Mark William KINNEY,
Plaintiff–Appellee,

v.

Raymond KALFUS, Defendant–Appellant,

Marilyn Butts; Harriet Swinger,
Defendants.

No. 93–3221.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1994.

Decided May 25, 1994.

Bruce Farmer, Jefferson City, MO, argued (Jeremiah W. (Jay) Nixon and Michelle Ward, on the brief), for appellant.

Robert Johnston, Kansas City, MO, argued, for appellee.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Dr. Raymond Kalfus, a prison dentist, appeals the district court's[1] denial of his motion for summary judgment in the 42 U.S.C. § 1983 suit filed against him by Mark Kinney, a prison inmate.[2] We affirm.

## I. BACKGROUND

On June 10, 1992, Kinney visited Dr. Kalfus and described several dental problems he

---

1. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

2. The district court granted summary judgment in favor of prison employees Marilyn Butts and Harriet Swinger, and Kinney does not appeal this decision.

was experiencing. He told Dr. Kalfus that one of his upper left molars (tooth # 15) needed pulling because it was chipped and decayed. Kinney also reported that one of his upper right teeth needed a cavity filled and his gum disease needed treatment.[3] After briefly examining Kinney's teeth, Dr. Kalfus extracted tooth # 14, which Kinney claims was the tooth next to the one that was supposed to be removed. Kinney alleges that Dr. Kalfus immediately acknowledged he had pulled the wrong tooth.

Two days later, Kinney visited Dr. Kalfus and received medication for an infection that had developed in the gum tissue surrounding the extraction site. On June 17, June 24, and July 1, Dr. Kalfus checked Kinney's infection; however, he refused Kinney's repeated requests to extract tooth # 15, fill his cavity, and treat his gum disease. During these visits, Kinney complained to Dr. Kalfus that he was experiencing severe pain on both sides of his mouth, he had difficulty eating, and his gums were bleeding. Dr. Kalfus claims that he refused to treat Kinney because he was argumentative and uncooperative.

During the July 1 visit, Kinney informed Dr. Kalfus that he was filing a malpractice lawsuit against him for removing the wrong tooth, and Dr. Kalfus allegedly told him to leave the office and not return. Kinney then filed several intra-prison grievance reports, which sought immediate dental care and requested, because of his impending lawsuit against Dr. Kalfus, a different dentist to treat him. Kinney's grievance reports and appeal were reviewed by Dr. Kalfus, and not by a neutral grievance officer. Apparently, Dr. Kalfus interpreted Kinney's grievance solely as a demand to see a non-institutional dentist, and he denied Kinney's request. Over six months after his initial dental visit, Dr. Kalfus filled Kinney's cavity and another dentist removed tooth # 15.

## II. DISCUSSION

█ Government officials who are performing discretionary functions are generally shielded from liability for civil damages and are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In order to determine whether Dr. Kalfus is entitled to summary judgment based on qualified immunity, we engage in a three-step inquiry: first, whether Kinney has asserted the violation of a constitutional right; second, whether this constitutional right was clearly established at the time the incident occurred; and third, viewing the facts in a light most favorable to Kinney, whether there is a genuine issue of material fact whether a reasonable official would have known his actions violated that right. *Foulks v. Cole County, Mo.,* 991 F.2d 454, 456 (8th Cir.1993).

In 1976, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (quotation omitted). Specifically, we have held that the refusal to provide follow-up dental care for a three weeks period, despite the knowledge that an inmate is suffering severe pain, could support a section 1983 violation. *Fields v. Gander,* 734 F.2d 1313, 1315 (8th Cir.1984).

Kinney concedes that Dr. Kalfus' removal of the wrong tooth does not constitute a constitutional violation; rather, Kinney's Eighth Amendment claim is based on the aftermath of this incident. Although Dr. Kalfus claims that Kinney was not treated because he was uncooperative, Kinney alleges that Dr. Kalfus refused his repeated requests for treatment between June 12 and July 1 and denies that he was uncooperative. When Dr. Kalfus became aware that Kinney filed a malpractice lawsuit against him, he refused to see Kinney again and left his medical condition untreated.

Relying on statements contained in Kinney's grievance reports, Dr. Kalfus claims that Kinney rejected his treatment and de-

---

3. Kinney was aware of his specific dental needs because he had consulted a dentist while he was released on parole, but he was returned to prison before he received the necessary treatment.

manded to see a non-institutional dentist. Dr. Kalfus argues that a prisoner does not have a constitutional right to choose his own health care provider, and a reasonable official has the right to rely on a prisoner's refusal to submit to medical treatment.

Dr. Kalfus ignores the apparent factual disputes in this case. Kinney maintains that he visited Dr. Kalfus on four occasions after the tooth was pulled, and Dr. Kalfus refused to treat his dental problems. Dr. Kalfus' reliance on the grievance reports is misplaced; these reports were not filed until after Dr. Kalfus allegedly told Kinney to leave his office and not return. We also do not read the grievance reports as narrowly as Dr. Kalfus does. Kinney did not demand to see a non-institutional dentist, he asked to see a dentist other than the one whom he had filed a malpractice claim against and who had continually refused to treat him. Although Dr. Kalfus is correct in his assertion that prison inmates do not have the right to choose their own dentists, Kinney's allegations create a question of material fact whether Dr. Kalfus refused to treat Kinney and then failed to refer him to another dentist in retaliation for Kinney's filing a malpractice lawsuit against him. Because Kinney's complaint creates a question whether Dr. Kalfus was deliberately indifferent to his serious medical needs, the district court correctly denied Dr. Kalfus' motion for summary judgment.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.