**Roberto LAZA, Plaintiff–Appellant,**

v.

**R.M. REISH, Warden, Defendant–Appellee.**

**No. 1143, Docket 95-2596.**

United States Court of Appeals, Second Circuit.

Argued March 15, 1996.

Decided May 22, 1996.

Jennifer L. Colyer, New York City (Ira S. Sacks, Fried, Frank, Harris, Shriver & Jacobson, New York City, of counsel), for Plaintiff–Appellant.

Glenn C. Colton, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Southern District of New York, Steven M. Haber, Assistant United States Attorney, New York City, of counsel), for Defendant–Appellee.

Before FEINBERG, WALKER and PARKER, Circuit Judges.

PER CURIAM:

Plaintiff Robert Laza, currently incarcerated in a New Jersey state prison, appeals

from a decision of the Southern District of New York (Miriam Goldman Cedarbaum, *District Judge*) dismissing his § 1983 complaint against Warden R.M. Reish on the grounds that it failed to state a claim upon which relief could be granted, and that Reish was entitled to qualified immunity. Plaintiff claims that Reish: (1) subjected Laza to punitive detention before an adjudication of guilt in violation of his clearly established rights under *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); and (2) deprived Laza of due process by segregating him from the general population without a hearing. For the following reasons, we affirm the district court's 12(b)(6) dismissal of Laza's complaint on the *Bell v. Wolfish* issue, and decline to entertain the appeal on the second due process issue.

## I.

## BACKGROUND

After his conviction for aggravated sexual assault and terrorist threats in 1981, appellant Robert Laza was sentenced to serve twenty-five years in a New Jersey state prison. Laza remained in state custody until 1990, when he was transferred to federal custody pending the resolution of outstanding federal drug money laundering charges against him. On September 9, 1992, while being held in the New York Metropolitan Correctional Center ("MCC"), Laza assaulted a prison counsellor who was attempting to conduct a routine search of his cell. The counsellor suffered a broken jaw and broken teeth.

Two days later, Laza was transferred from the MCC to the Federal Correctional Institution at Otisville. ("Otisville"). Upon his arrival at Otisville, Laza was placed in administrative detention in the Special Housing Unit, a secure unit that houses inmates deemed inappropriate for housing within the general prison population. Defendant claims that Laza was placed in administrative detention because, in light of his attack on a staff member, he was a safety risk to the staff and the other inmates.

On September 24, 1992, Laza was indicted by a federal grand jury for assault resulting in serious bodily injury, and assault on a federal officer. On June 14, 1993, Laza was convicted of both of these charges, for which he was sentenced in February 1994. Laza remained in administrative detention at Otisville for seventeen months until sentencing. Nine of these months were served prior to trial, and eight were served after trial.

Laza argues that, prior to his conviction, he was held in administrative detention at Otisville without the requisite hearing or notice of the reasons for his confinement. He claims to have received only four of seventeen mandated monthly reviews. In addition, when Laza wrote to Reish requesting that the restrictions placed on him be eased, Reish declined, stating that Laza would "remain in administrative detention until [he was] acquitted or sentenced."

Laza filed a *pro se* complaint on December 15, 1993. The complaint charged, *inter alia*, that Reish had violated Laza's due process rights under the Fifth Amendment by detaining him prior to an adjudication of guilt and without a hearing. Laza amended the complaint on January 20, 1994. On April 20, 1995, defendant moved for an order dismissing the complaint pursuant to Rules 12(b)(1) or 12(b)(6), or for summary judgment on the ground of qualified immunity. Laza obtained counsel, who responded to this summary judgment motion.

By order read into the record on July 12, 1995, the district court granted defendant's motion. Judge Cedarbaum found that the complaint failed to state a claim under *Bell v. Wolfish*. She also found that Reish was entitled to qualified immunity, because he could reasonably have believed that the prison had cause to segregate Laza from the rest of the population due to his assault on the prison guard. This appeal followed.

## II.

## DISCUSSION

Laza's complaint raised two distinct arguments under the Due Process Clause of the Fifth Amendment, which are addressed in turn.

## A. Punitive Segregation of a Pre–Trial Detainee

█ Laza claims that, for the first nine months of his segregation at Otisville, he was a pre-trial detainee subjected to unlawful punishment. In making this argument, Laza relies on *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), in which the Supreme Court held that pre-trial detainees have a due process right to be free from punishment prior to an adjudication of guilt. *Id.* at 535, 99 S.Ct. at 1871–72. Laza must prove two things to prevail on this argument: (1) that he was a pre-trial detainee relative to the federal government prior to his conviction on federal assault charges, despite the fact that he was still serving a state sentence; and (2) that his detention was punitive rather than administrative. *See id.* at 536–37, 99 S.Ct. at 1872–83.

This circuit has previously rejected the argument that an inmate held under the same circumstances as Laza is a pre-trial detainee. In *United States v. Willoughby*, 860 F.2d 15 (2d Cir.1988), *cert. denied*, 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989), two convicted state prisoners were transferred to federal prison to await trial on federal robbery charges. The prisoners argued that they were federal pre-trial detainees, and as such were entitled to greater Fourth Amendment privacy rights than convicted inmates. *Id.* at 20. The court concluded that as long as the inmates had not completed their state sentences while in federal custody, they were convicted prisoners for the purpose of their federal incarceration, in spite of the fact that the federal charges against them were still pending. *Id.* In *Willoughby*, however, the record did not exclude the possibility that the inmates had already completed their state sentences. *Id.* at 20–21. Thus, the court's holding rested on another ground—that the plaintiffs' Fourth Amendment arguments were meritless even if they were pre-trial detainees. *Id.* at 21.

In this case, it is clear that Laza had not completed his New Jersey state sentence at the time in question.[1] Therefore, our reasoning in *Willoughby* squarely applies. Because he had not completed his state sentence when he was segregated at Otisville, Laza was not a pre-trial detainee entitled to the procedural protections outlined in *Bell v. Wolfish*. *Accord Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994) (concluding that Munz, a state convict released from state prison into the custody of federal authorities to stand trial on federal charges, was a convicted prisoner rather than a pre-trial detainee and therefore was protected by the eighth amendment).

Because we have found that Laza was not a pre-trial detainee when he was segregated at Otisville, we need not consider whether the detention was administrative or punitive.

## B. Procedural Due Process Under Hewitt and Sandin

█ Laza's complaint also alleged that Reish violated his due process rights by depriving him of his liberty interest in remaining free from administrative segregation without the requisite notice and opportunity to be heard. *See Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The district court did not rule on this issue, because Laza's attorney expressed her intention to withdraw the claim several times during oral argument on defendant's summary judgment motion. Counsel agreed on the record that she was "asserting just this one claim that this was punitive detention," and that she had "withdrawn all of the claims except the claim that this was punitive detention, which violated the plaintiff's Fifth Amendment right." She did not dispute the court's decision to "treat[ ] the complaint as amended in that fashion," or the court's assertion that all other claims "ha[d] been withdrawn."

Since Laza's attorney agreed to treat the complaint as amended to state only the *Bell v. Wolfish* claim, we decline to consider the alternative procedural due process argument as part of this appeal. *See* 6 Charles A.

---

1. Following his 1981 conviction in New Jersey, Laza was sentenced to twenty-five years impris-

onment.

Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed. 1990) ("A pleading that has been amended under Rule 15(a) [of the Federal Rules of Civil Procedure] supersedes the pleading it modifies.... Once an amended pleading is interposed, the original pleading no longer performs any function in the case...."); *Terkildsen v. Waters,* 481 F.2d 201, 205 (2d Cir.1973) (declining to consider issue not raised below in part because "considerations underlying [the] subtle legal issue [had not] been exposed and distilled by the able district judge so as to facilitate more informed consideration by this court").

## CONCLUSION

While Laza was held in a federal facility awaiting trial on assault charges, he was not a pre-trial detainee for the purposes of *Bell v. Wolfish* because he had yet to complete his New Jersey state sentence.

The order of the district court is hereby affirmed.